```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

DANIELLE VOLLMAR                 *

           Plaintiff             *

      vs.                        *   CIVIL ACTION NO. MJG-11-772

O.C. SEACRETS, INC., et al.      *

           Defendants            *

*     *      *      *      *      *      *      *      *
```

ORDER RE MOTIONS TO DISMISS

The Court has before it Defendants O.C. Seacrets, Inc.'s and O.C. Seacrets, LLC's Motion to Dismiss [Document 12], the Seacrets Defendants' Motion to Dismiss Scott Shepard's Cross Claim, and Motion to Strike Scott Shepard's Second Affirmative Defense to the Seacrets Defendants' Cross Claim Against Shepard and Memorandum in Support Thereof [Document 19] and the materials submitted relating thereto.  The Court has held a hearing and had the benefit of the arguments of counsel.

I.    BACKGROUND[1]

At all times relevant hereto, Defendants O.C. Seacrets, Inc. and O.C. Seacrets, LLC (collectively, "Seacrets Defendants"), Maryland entities, have owned and operated

---

[1] The "facts" stated herein are as alleged by Plaintiff and are not necessarily agreed upon by Defendants.

Seacrets Resort, a vacation-entertainment complex on the bay in Ocean City, Maryland. The Seacrets Resort provides a water taxi service between the resort bar and boats that are moored in the bay at Seacrets Resort mooring buoys.

On July 5, 2008, Defendant Scott Shepard ("Shepard") moored his boat at a mooring buoy in Assawoman Bay near the Seacrets facility. A Seacrets water taxi[2] took Shepard from his boat to the facility. Shepard consumed alcohol provided at the facility and became intoxicated. Shepard, together with nine or ten others, boarded a Seacrets water taxi, the TIPSY III,[3] and the group was delivered to Shepard's boat. Plaintiff Danielle Vollmar ("Vollmar") alleges that, sometime after Shepard and the group had been taken to Shepard's boat, she boarded the TIPSY III and was taken to Shepard's boat.[4]

---

[2] The water taxi that ferried Shepard to Seacrets was not specifically identified in the Complaint. However, the identity appears immaterial since nothing relevant is alleged to have occurred during this trip.

[3] The water taxi that ferried Shepard and his group from Seacrets to Shepard's boat was not identified by Vollmar in the Complaint, but the Seacrets Defendants have identified it as the TIPSY III.

[4] The Seacrets Defendants contend that they have irrefutable evidence – a security video – establishing that Vollmar was in the first group. The Court will, however, accept Vollmar's allegation as true for present purposes. Also, although not identified by Vollmar, the Court will presume the identity of the water taxi that delivered her to Shepard's boat as the TIPSY III.

Shepard, sometime after Vollmar arrived, operated the boat while in a state of intoxication.  Shepard's boat left the mooring buoy at about 1:00 a.m. and sometime before 1:58 a.m.[5] allided[6] with the cement pilings of a bridge on the Isle of Wight Bay, a Maryland coastal bay within the navigable waters of the United States, approximately a mile from the Seacrets Resort.  Shepard's negligence caused the allision in which Vollmar was seriously injured.

Vollmar filed the instant lawsuit against the Seacrets Defendants and Shepard, presenting claims under Admiralty and Maritime Jurisdiction (Fed. R. Civ. P. 9(h)) and based on common law negligence.  The claims are:

- Admiralty and Maritime Jurisdiction
    - Count I (Seacrets Defendants)– Negligence
    - Count II (Shepard) – Negligence
    - Count III (All Defendants) – Civil Conspiracy
    - Count IV  (Seacrets Defendants) – Maritime Dram Shop Liability
- Maryland Common Law

---

[5] The boat departed at approximately 1:00 a.m. At 1:58 a.m., the officers of the Maryland Department of Natural Resources arrived on the accident scene after receiving a 911 cell phone call from one of the other boat passengers.

[6] "Admiralty law draws a distinction between allisions and collisions. An allision occurs when a moving vessel strikes a stationary object, and a collision occurs when two moving vessels strike each other." Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport, 596 F.3d 357, 362 (6th Cir. 2010).

- o Count V (Seacrets Defendants) – Negligence
- o Count VI (Shepard) – Negligence

The Seacrets Defendants filed cross-claims against Shepard for indemnity and contribution, and Shepard responded with cross-claims against the Seacrets Defendants.

By the instant motions, the Seacrets Defendants seek dismissal of all claims and cross claims against them.

## II. DISMISSAL STANDARD

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6)[7] tests the legal sufficiency of a complaint. A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. However, conclusory statements or a "formulaic recitation of the elements of a cause of action" will not suffice. Id. A complaint must allege sufficient facts to "cross 'the line between possibility

---

[7] All "Rule" references herein are to the Federal Rules of Civil Procedure.

and plausibility of entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.  Thus, if the well-pleaded facts contained within a complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009))(internal quotation marks omitted).

III. DISCUSSION

    A.    ADMIRALTY CLAIMS

        1.    Negligence (Count I)

Maritime tort law embodies the general principles of common law negligence.  Regan v. Starcraft Marine LLC, 719 F. Supp. 2d 690, 695 (W.D. La. 2010).  To adequately plead a cause of action for negligence under general maritime law, Vollmar must allege facts sufficient to support plausible claims that: (1) there was a duty owed by the defendant to the plaintiff; (2) the duty was breached; (3) the plaintiff sustained injury; and (4) there is a

causal connection between the defendant's conduct and the plaintiff's injury. Id.; see also Evergreen Intern., S.A. v. Norfolk Dredging Co., 531 F.3d 302, 308 (4th Cir. 2008)("The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law. . . .").

These elements are addressed in turn.

### a. Duty to Plaintiff

#### i. Dram Shop Liability

Vollmar attempts to establish that a duty was owed to her based on a dram shop liability theory under general maritime law and, alternatively, under Maryland law.  If Maryland law recognized dram shop liability, Vollmar could argue that the Seacrets Defendants, having caused Shepard's intoxication, had a duty that extended to all injured by virtue of his intoxication. Vollmar, in effect, makes this argument in connection with her admiralty dram shop liability claim, discussed below.  However, Maryland law does not recognize dram shop liability.[8]  Therefore, there was no duty owed Vollmar under state common law by virtue

---

[8] See Felder v. Butler, 438 A.2d 494 (Md. 1981)(declining to find liability where the legislature has not created dram shop liability by statute); Wright v. Sue & Charles, Inc., 749 A.2d 241 (Md. Ct. Spec. App. 2000)(collecting cases).

of the fact that Shepard became intoxicated at the Seacrets facility.

### ii. Delivery of Shepard to the Boat

Vollmar contends that the Seacrets Defendants owed a duty to her because they delivered an intoxicated Shepard to his boat and, therefore, created a dangerous condition since he would foreseeably operate the boat negligently and cause damages to others who might later board the boat or be injured in an accident.  This theory is analogous to, and perhaps identical with, a dram shop liability theory.

To support this contention, Vollmar seeks to rely upon the rationale of Commerce Ins. Co. v. Ultimate Livery Service Inc., 897 N.E.2d 50 (Mass. 2008).  In Commerce Ins., a private transportation service company transported an intoxicated person to his car, the person proceeded to drive the car while intoxicated and, thereafter, caused a collision in which an individual was killed.  The majority in the Massachusetts court concluded that the "defendants owed a duty of reasonable care to avoid discharging a passenger, who they knew, or should have known, was intoxicated and likely to drive an automobile [and injure others thereafter]."  Id. at 57.  The Commerce Ins. court noted that other states' courts have decided to the contrary,

7

and that many courts (including Maryland) have not yet addressed the issue.  Id. at 57 n.10.

Vollmar cites no Maryland authority that provides any indication that the Maryland courts would rule as did Massachusetts.  Indeed, the absence of dram shop liability in Maryland law indicates that the Maryland Court of Appeals would not.

The Court also notes that in Commerce Ins., the driver allowed alcoholic drinks to be consumed within the van, transported the passengers between bars, observed the passengers drinking, and took the passengers to a liquor store to buy alcohol, prior to leaving the passenger at his car. These facts make it much more likely that the driver should have known the foreseeable risk in leaving the passenger to drive his own vehicle and might justify the expansion of the persons to whom a duty was owed.  Indeed, the Commerce Ins. concurring opinion limited the decision to its facts and put weight on the proposition that the carrier knew the passengers were drinking and may have participated in getting them alcohol.  Id. at 64-67.  Hence, one could view the decision in Commerce Ins. as, in effect, adopting dram shop liability for a passenger transporter that provides (or actively facilitates) an inebriated

passenger's consuming alcohol while being transported to his car.

Vollmar does not allege that Shepard obtained or consumed alcohol while aboard the TIPSY III.  Even had there been such an allegation, the Court would still conclude that the Seacrets Defendants, by delivering Shepard to his boat, had no duty to persons (including Vollmar) who might be injured by Shepard's operation of his boat thereafter.

### iii.   Delivery of Vollmar to the Boat

Vollmar contends that the Seacrets Defendants owed a duty to her, as a passenger on the TIPSY III, to deliver her safely to her destination and not put her in danger.

Vollmar's position – as an abstract statement of law – is correct.  Certainly, the operator of a water taxi must provide for the safety of its passengers while boarding, traveling, and disembarking.  Moreover, one can present hypothetical situations in which a water taxi operator could be viewed as putting a passenger in a dangerous situation.  For example, disembarking her on a burning pier, a sinking boat, etc.

Therefore, the Court finds that the Seacrets Defendants had a duty to exercise ordinary care to avoid putting a TIPSY III passenger, such as Vollmar, in a dangerous situation.  However,

as discussed below, Vollmar has not adequately presented a plausible claim that the Seacrets Defendants violated that duty.

### b. Violation of the Duty

The Court finds that the Seacrets Defendants had a duty to exercise ordinary care to avoid putting Vollmar in a dangerous situation when delivering her to Shepard's boat. To support her claim that this duty was violated, Vollmar alleges, for example:

> Defendant Seacrets failed to use the utmost degree of care, skill, and diligence in everything that concerned its passengers' safety, including but [not] limited to ferrying the Plaintiff onto the vessel of a visibly intoxicated boat operator, and failing to warn the Plaintiff of the clear risks thereto.
>
> Defendant Seacrets failed to warn or notify the Plaintiff of potential danger related to the intoxicated state of Scott Shepard, the boat operator, who had been previously ferried to his vessel in a conspicuously intoxicated condition.

Compl. 8, ¶¶ 25-26.

Vollmar does not allege <u>facts</u> that would make plausible the conclusory allegation that the Seacrets Defendants negligently violated a duty to her. For example, there are no allegations regarding what it is that the TIPSY III operators observed that rendered Shepard <u>visibly</u> and <u>conspicuously</u> intoxicated. There are no allegations that make it plausible to contend that the

operators would know, or should know, that Shepard would be the person – of the ten or so delivered to the boat - who would operate the boat.  Indeed, according to Vollmar's allegations, Shepard did not operate the boat until sometime after he (and nine or ten others) departed the water taxi and the water taxi returned to the facility and returned some time later with Vollmar.

In addition, there are no facts alleged that would establish that the same water taxi operators that delivered Shepard to the boat also delivered Vollmar to the boat.

A complaint must allege facts – not conclusions – sufficient to present a plausible claim.  Given the paucity of factual allegations to support the conclusions asserted, it is not plausible to find that the Seacrets Defendants violated their duty of reasonable care by delivering Vollmar into a foreseeably dangerous condition.  Rather, the facts alleged establish that Vollmar was safely delivered to her requested destination. There are no allegations supporting a plausible claim that delivering Vollmar to Shepard's moored boat, with some ten people on board, placed her in danger for which the water taxi operator would be held liable.

Furthermore, as discussed below, even if one were to view the delivery of Vollmar to Shepard's boat as an act of

11

negligence, Vollmar has not presented a plausible basis for a finding that this alleged negligence was a proximate cause of her injury.

### c. Injury

Vollmar has adequately pleaded that she sustained injuries from the allision at issue.

### d. Causation

Essentially, Vollmar claims that the Seacrets Defendants negligently violated a duty to her by delivering her to the boat at issue. Vollmar contends that this alleged negligence was a proximate cause of her injury. The Court, however, finds in the alleged facts, intervening causes that render implausible a proximate cause conclusion.

After the alleged negligent act of the Seacrets Defendants, delivering Vollmar to Shepard's boat, the following occurred prior to the allision at issue:

1. Vollmar observed Shepard's "conspicuously intoxicated" condition and did not attempt to get the water taxi to return so she could leave the boat.

2. The other eight or nine passengers on the boat, who had observed Shepard's "visibly" and "conspicuously intoxicated condition" when travelling on the TIPSY III and observed his "conspicuous intoxication" for a substantial time before Vollmar arrived, chose to

> stay on Shepard's boat and not board the TIPSY III when Vollmar arrived.
>
> 3. Shepard decided that he was capable of operating the boat and did so with the acquiescence of Vollmar and the others on board despite his "conspicuously intoxicated" condition.
>
> 4. Shepard operated the boat, without incident, for the time it took to leave the mooring buoy until the allision occurred about a mile away.
>
> 5. While Shepard was operating the boat, visibility on board became reduced due to fog and the boat did not have radar creating a more dangerous condition than existed when Vollmar boarded the boat.

It is a well-established general rule that damages cannot be recovered for a negligent act unless that act is "the direct and continuing cause of the injury without the intervention of any independent factor." Garbis v. Apatoff, 63 A.2d 307, 309 (Md. 1949). It is not enough for a plaintiff to allege that the negligence might have been a "but for" cause of the injury if the accident might well have resulted from one of several causes. Id.

Analysis of an intervening negligent act or superseding cause must be performed by reviewing the allegations in the complaint. Collins v. Li, 933 A.2d 528, 556-57 (Md. Ct. Spec. App. 2007). Vollmar alleges in conclusory fashion that she suffered injuries "as a direct and proximate result of the aforesaid carelessness and negligence." However, as noted, Vollmar's factual allegations are insufficient to support this

conclusion. Rather, the facts alleged establish that there were intervening and superseding causes negating a finding of proximate cause.

### 2. Admiralty Civil Conspiracy (Count III)

Vollmar alleges civil conspiracy against all defendants under Admiralty and Maritime Jurisdiction under Federal Rule 9(h).

The Court applies Maryland law in the absence of federal law governing conspiracy in admiralty cases. See Alonso v. McAllister Towing of Charleston, Inc., 595 F. Supp. 2d 645, 651–52 (D.S.C. 2009)(applying South Carolina civil conspiracy law to admiralty case because no federal law governing civil conspiracy in admiralty cases exists, no prejudice would result to either party, and its application would not threaten uniformity).

In Maryland law, civil conspiracy is not recognized as an independent tort. See Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc., 665 A.2d 1038, 1045 (Md. 1995). The Court of Appeals has "consistently held that 'conspiracy' is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." Id. (quoting Alexander v. Evander, 650 A.2d 260, 265 n.6 (Md. 1994)). A Plaintiff can utilize a civil conspiracy

theory to hold a defendant liable for torts committed by co-conspirators within the scope of the conspiracy.

Therefore, Vollmar might be able to assert a conspiracy theory to hold the Seacrets Defendants liable for a tort committed by Defendant Shepard.  However, Vollmar has by no means adequately pleaded such a claim.  Rather, Vollmar makes a conclusory assertion that the Seacrets Defendants and Shepard agreed to negligently transport Vollmar from the shore to Shepard's boat while knowing that Shepard was intoxicated.

Vollmar does not allege facts to support such an assertion of an agreement or understanding.  Without factual allegations that provide an indication of when and how the agreement occurred and how each of the defendants specifically were parties to the agreement, there is no civil conspiracy claim. See Day v. DB Capital Group, LLC, Civil Action No. DKC 10-1658, 2011 WL 887554, *6 (D. Md. March 11, 2011)(applying Maryland law)("The plaintiff must set forth more than just conclusory allegations of the agreement.")(citations omitted); see also A Soc'y Without A Name v. Virginia, --- F.3d ----, 2011 WL 3690000, at *3 (4th Cir. Aug. 24, 2011)(quoting Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995)(holding claim failed to allege specific facts necessary to uphold a § 1985(3) conspiracy

15

claim where it was "comprised almost entirely of conclusory allegations unsupported by concrete facts")).

Accordingly, the conspiracy claim shall be dismissed.

### 3. Admiralty Dram Shop Liability (Count IV)

Vollmar asserts a cause of action against the Seacrets Defendants under a theory of general maritime dram shop liability.

It appears that federal trial courts have disagreed on whether there is a maritime dram shop law. Compare Bay Casino, LLC v M/V Royal Empress, 199 F.R.D. 464, 467 (E.D.N.Y. 1999)(finding that federal maritime law may be applied to a dram shop liability cause of action), Young v. Players Lake Charles, L.L.C., 47 F. Supp. 2d 832, 837 (S.D. Tex. 1999)("there is an existing maritime rule governing the issue of dram shop liability"), with Meyer v. Carnival Cruise Lines, Inc., No. C-93-2383 MHP, 1994 WL 832006, at *4 (N.D. Cal. Dec. 29, 1994)(finding no authority supporting federal maritime dram shop law and applying the state's dram shop law), Horak v. Argosy Gaming Co., 648 N.W.2d 137, 147 (Iowa 2002)(finding no federal maritime statute or maritime dram shop law preempting the state dram shop law), Kludt v. Majestic Star Casino, LLC, 200 F. Supp.

2d 973 (N.D. Ind. 2001)(applying state dram shop law to supplement general maritime law).

Even if the Court were to decide that there can be a valid maritime dram shop claim, Vollmar has not presented one against the Seacrets Defendants.

All of the cited decisions addressing the maritime dram shop claim present facts in which there was provision or consumption of alcohol aboard a vessel.[9]  In these cases, the courts analyzed whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water.

In the instant case, all provision and consumption of alcohol provided by the Seacrets Defendants was on land, prior to Shepard's boarding the TIPSY III.  There is no allegation that alcohol was provided or consumed aboard the water taxi itself and no allegation of any harm occurring aboard the water taxi.  If there were any potential dram shop liability on the part of the Seacrets Defendants, it would have to be based upon

---

[9] For example, in Players, an automobile collision was caused by a driver who became intoxicated while drinking aboard a riverboat casino; in Bay Casino, a minor had become intoxicated as a passenger during a cruise and subsequently caused an automobile accident; in Horak, the harm complained of was the sale and service of alcohol to an intoxicated adult on a vessel capable of transporting passengers on a navigable waterway; in Meyer, the plaintiff consumed too much alcohol aboard a cruise ship and fell off a stairway; in Kludt, a riverboat casino patron was injured on board while intoxicated.

providing alcohol to Shepard on land.  Thus, any such claim would not be a maritime claim and, as noted, is not cognizable under Maryland law.

Accordingly, Vollmar does not present a plausible claim based upon any maritime dram shop liability theory.

### B.  COMMON LAW CLAIM

#### 1.  Maryland Law Negligence Claim (Count V)

As discussed above, Vollmar's negligence claim under the Court's admiralty and maritime jurisdiction is governed, substantively, by the same elements as Maryland common law negligence.  Accordingly, for the reasons set forth with regard to Count I, the Court shall dismiss Vollmar's common law negligence claim.

### C.  CROSS-CLAIMS

The Seacrets Defendants filed cross-claims against Shepard for indemnity and contribution, and Shepard responded with cross-claims against the Seacrets Defendants.

Since the Court is dismissing all claims presented by Vollmar against the Seacrets Defendants, the cross-claim against Shepard is rendered moot and, for the reasons set forth herein in regard to the dismissal of Vollmar's negligence

claims, Shepard's cross-claim against the Seacrets Defendants shall be dismissed.

IV. <u>CONCLUSION</u>

For the foregoing reasons:

1. Defendants O.C. Seacrets, Inc.'s and O.C. Seacrets, LLC's Motion to Dismiss [Document 12] is GRANTED.

    a. Counts I, III, IV, and V against the Seacrets Defendants are dismissed.

    b. Counts II and VI against Scott Shepard remain pending.

2. The Seacrets Defendants' Motion to Dismiss Scott Shepard's Cross Claim [Document 19] is GRANTED.

3. The Seacrets Defendants' Motion to Strike Scott Shepard's Second Affirmative Defense to the Seacrets Defendants' Cross Claim Against Shepard [Document 19] is DENIED AS MOOT.

    a. The Seacrets Defendants' Cross Claim Against Scott Shepard [Document 11] is dismissed as moot.

    b. Scott Shepard's Cross Claims Against the Seacrets Defendants [Document 18] are dismissed.

4. Plaintiff shall arrange a telephone conference with all Defendants to be held by October 21, 2011 to address:

    a. Whether to enter Judgment pursuant to Rule 54(b) to enable an immediate appeal from the dismissal of all claims against the Seacrets Defendants, and

        b.    The scheduling of further proceedings in regard to the claims against Defendant Shepard.

SO ORDERED, on <u>Wednesday, October 5, 2011</u>.

                              /s/_____

                      Marvin J. Garbis
              United States District Judge